USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS BELCASTRO, individually and on behalf of all others similarly situated,

                Plaintiff,

-against-

BURBERRY LIMITED,

                Defendant.

16-CV-1080 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, District Judge:

      This case is one of many[1] that have been brought in recent years under a variety of state laws to challenge the alleged practice of some retailers that operate "outlet stores" to price their products in a manner that misleads the buyer to believe that he or she is getting a "bargain." The Plaintiff in this case has attempted to shoehorn his "But-I-Thought-I-Was-Getting-A-Bargain" claims into Florida's consumer protection statute and common law torts. Although the Court can appreciate Plaintiff's disappointment when he learned that he may not have gotten the bargain he thought he had, it agrees with the Defendant that, as currently drafted, this Complaint does not state a claim on which relief can be granted.

      For the reasons stated below, Defendant's motion to dismiss is GRANTED.

---

[1] *See, e.g.*, *Morrow v. Ann Inc.*, No. 16-CV-3340 (JPO), 2017 WL 363001 (S.D.N.Y. Jan. 24, 2017); *Marino v. Coach, Inc.*, No. 16-CV-1122 (VEC) (S.D.N.Y.); *Rael v. Dooney & Burke, Inc. et al.*, No. 16-CV-371 (S.D. Cal.); *Dennis v. Ralph Lauren Corp. et al.*, No. 16-CV-1056 (S.D. Cal.); *Rubenstein v. The Neiman Marcus Grp.*, No. 14-CV-7155 (C.D. Cal.).

1

## BACKGROUND[2]

In July 2014 and July 2015, Plaintiff Thomas Belcastro visited a Burberry Outlet store in Orlando, Florida. Compl. (Dkt. 13) ¶ 8. Some of the merchandise had price tags showing two prices: a so-called "deceptive reference price" and a "now" price that was "significantly" lower than the deceptive reference price. *Id.* ¶ 3. The reference price was identified as the "Manufacturer's Suggested Retail Price" or the "Was" price. *Id.* Plaintiff, believing he was receiving a "bargain" or a "deal," purchased several shirts at prices ranging from $119.99 to $249.99. *Id.* ¶ 33. Plaintiff alleges that the price tags on all of the products that he purchased had reference prices that were greater than the "Now" prices that he paid for the clothing. *Id.* ¶ 34.

According to the Complaint, the deceptive reference prices "are fictional creations designed by Burberry to portray false price reductions," *id.* ¶ 41; "Burberry never intended, nor did it ever, sell the items at the represented deceptive [r]eference [p]rices." *Id.* ¶ 36. Plaintiff claims that "Burberry manufactures the Burberry Outlet Products for exclusive sale at its Burberry Outlets and always sells these goods for the advertised 'Now' price." *Id.* ¶ 5. "As a result, such items were never sold, never suggested to be sold, or even intended to be sold at the [d]eceptive [r]eference [p]rice listed on its price tags." *Id.*

Plaintiff claims he was "deceived by the false price comparison into making a full retail purchase with no discount." *Id.* ¶ 36. Plaintiff claims that he "would not have purchased the Burberry Outlet Products, or would not have paid the price he did, if he had known he was not truly receiving a bargain, or receiving a discount, as specified." *Id.* ¶ 37. According to

---

[2] In addressing the sufficiency of the complaint on a motion to dismiss, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences." *See Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014).

Plaintiff, he believed "he was getting a terrific bargain on his purchases . . . [when] [i]n reality, he was not getting a bargain at all." *Id.* ¶ 30. He further alleges that "consumers—including Plaintiff—reasonably perceived they were receiving products which were regularly sold at substantially higher prices (and were, therefore, worth more) than what they paid." *Id.* ¶ 62.

## DISCUSSION

**1. The Court Has Subject Matter Jurisdiction**

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). Article III requires the plaintiff to establish an injury in fact, a causal connection between the injury and the conduct complained of, and that the injury will likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014). "But 'where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id.* (quoting *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003)). "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

Defendant challenges Plaintiff's claim that he suffered an Article III injury, claiming that Plaintiff's allegations about his purchase are "impossible." Def.'s Mem. (Dkt. 3) at 8. Defendant claims that "[n]ot a single one of his allegations squares with the price at which Burberry actually sold those items, and some blatantly contradict the fact that Burberry did not offer certain items for sale at the stores and times Plaintiff allegedly bought them." *Id.* Defendant supports this claim with a sworn declaration from Burberry's vice president of merchandising, Paul Chomyonk. *See* Declaration of Paul Chomyonk ("Chomyonk Decl.") (Dkt. 31). When a party brings a "factual" challenge to jurisdiction based on extrinsic evidence, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno v. Wallack Ader Levithan Assoc.,* 932 F. Supp. 94, 95 (S.D.N.Y. 1996) (internal citations omitted).

The Court does not find this challenge to be truly jurisdictional. Accepting as true Defendant's evidence about pricing and availability, at least one of the items, a navy shirt, item number 3872648, was available for purchase when Plaintiff claimed to have purchased it. *See* Compl. ¶ 33; Chomyonk Decl. ¶ 8. Although Defendant states that the navy shirt was sold for eleven dollars less than Plaintiff alleges he paid, Compl. ¶ 33; Chomyonk Decl. ¶ 8, the Court does not find that small factual discrepancy regarding the price sufficient to defeat standing. Plaintiff's allegation that he was injured by the purchase of the navy shirt is sufficient to meet the "low threshold" for injury required to establish Article III standing. *See Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) ("Injury in fact is a low threshold, which we have held 'need not be capable of sustaining a valid cause of action.'" (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006))). Whether Plaintiff in fact purchased the

other items identified in the complaint and whether those items were marketed with a deceptive reference price is otherwise a question of fact to be resolved at a later stage in these proceedings.

Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

**2. Plaintiff Fails to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, courts "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (quoting *Litwin v. Blackstone Grp., LP*, 634 F.3d 707, 715 (2d Cir. 2011)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.,* 751 F.3d 64, 70 (2d Cir. 2014).

Defendant moves to dismiss on the grounds that Plaintiff has not identified any "actual damages" that could be the basis for a claim under New York or Florida law. Def.'s Mem. at 14-18. Although each of Plaintiff's claims has distinct elements, Defendant argues that both Florida and New York law require Plaintiff to allege an injury based on either the price or "intrinsic

5

value" of the products. Def.'s Mem. at 16.³ As noted at the outset, this case is one of several to challenge retailers' pricing policies under consumer protection laws and common law torts, and the courts appear split on whether a disappointed bargain-hunter suffers any "actual damages." Applying California law, the Ninth Circuit has held that a disappointed bargain hunter may suffer actual injury based on his mistaken subjective valuation of the product. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013). *Hinojos* is in tension with decisions from other federal courts, however, including the Seventh Circuit, which have held that disappointed bargain-hunters do not allege any "actual injury" simply because they did not get as good a deal as they had hoped. *See Kim v. Carter's Inc.*, 598 F.3d 362, 365-66 (7th Cir. 2010) (applying Illinois law); *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 49-53 (D. Mass. 2015) (applying Massachusetts law). Defendant's argument is that New York law (and by extension, Florida law) are similar and do not recognize any injury based solely on allegations that the plaintiff subjectively believed that he was getting a better bargain than turned out to be true.

**A.     Common Law Fraud**

Under New York law, to allege fraud, the complaint must allege "a representation of material fact, falsity, scienter, reliance and injury." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999). "Actual damages" may be shown by allegations that the plaintiff paid a "price premium" because of the defendant's misrepresentation or by allegations that the plaintiff did not

---

³     Defendant argues that Florida law should apply because "[u]nder New York choice of law principles, claims sounding in fraud . . . are governed by the law of 'the state in which the injury is deemed to have occurred, which is usually where the plaintiff is located.'" *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 12-MD-2413, 2013 WL 4647512, at *19 (E.D.N.Y. Aug. 29, 2013) (quoting *Nat'l W. Life. Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 89 F. App'x 287, 288 (2d Cir. 2004) (summary order)). Plaintiff argues that New York law is appropriate under New York choice-of-law rules because Defendant is headquartered in New York, and "a substantial part of the event giving rise to Plaintiff's claim arose [in New York] including the creation of the scheme alleged in this Complaint." Pl.'s Opp. (Dkt. 36) at 19 (quoting Compl. ¶¶ 9, 12). The Court declines to conduct a choice of law analysis at this stage and assumes, as Plaintiff proposes, that for the purposes of this motion, New York law applies. The Court will therefore analyze Plaintiff's fraud claim under New York law and the remaining claims under both New York and Florida law.

receive the product for which he bargained. *See Braynina v. TJX Cos., Inc.*, No. 15-CV-5897 (KPF), 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016). But New York law does not recognize an injury based on deception itself—the fact that Plaintiff was deceived is not, standing alone, an "actual injury." *See Small*, 94 N.Y.2d at 56; *see also Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 447-48 (2d Dep't 2007) ("actual, although not necessarily pecuniary, harm" is required).

The *Small* case illustrates the difference between actual damages and an ephemeral injury based solely on deception. In *Small*, a putative class of plaintiffs alleged that cigarette manufacturers had engaged in deceptive trade practices by concealing from the market evidence that smoking cigarettes was addictive. *Small*, 94 N.Y.2d at 51. The plaintiffs did not seek to recover for the "addiction component" of their claim; rather, they argued that "defendants' deception prevented them from making free and informed choices as consumers." *Id.* at 56. The Court of Appeals rejected this "choice-as-injury" theory: "[w]ithout addiction as part of the injury claim, there is no connection between the misrepresentation and any harm from, or failure of, the product." *Id.*

Although *Small* is factually distinguishable, courts applying New York law have consistently recognized that *Small* requires there to be a connection between the defendant's deception and an objective injury, either in terms of price or product. In "price premium" cases, the plaintiff alleges that the defendant's deception caused them to overpay for a product. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311 (JSR), 2013 WL 6504547, at *4-5 (S.D.N.Y. Dec. 11, 2013) (mislabeled olive oil retailed for more than accurately-labeled olive oil products); *In re Clorox Consumer Litig.*, No. 12-00280 SC, 2013 WL 3967334, at *7 (N.D. Cal. July 31, 2013) (Fresh Step cat litter, which contains carbon as an odor reducer, is priced higher than

regular clay litter and litter that uses baking soda as an odor reducer). Closely related are fraud cases in which the plaintiff asserts that he was injured by a misrepresentation about the intrinsic qualities of the product. *See, e.g.*, *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395 (JG), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) (defendants misrepresented dietary value of Vitamin Water); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (defendants misrepresented contents of Smart Balance spread). Plaintiff's alleged injury, in his words that he "did not get what he bargained for[:] Burberry merchandize at a discount," fits into neither of these categories. Pl.'s Opp. at 11. Plaintiff has not cited any case in which a court, applying New York law, has recognized a plaintiff's subjective disappointment as a form of "actual damages." *See Koenig*, 995 F. Supp. 2d at 288-89 ("'Consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under [New York law],' but allegations that the plaintiff paid a price premium for a product based upon deceptive practices are sufficient to state an injury." (quoting *Rodriguez v. It's Just Lunch, Int'l,* No. 07-CV- 9227 (SHS), 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010))).

*Small* is in accord with the decisions of other federal and state courts that have rejected misrepresentation claims based solely on a theory that the defendant's misrepresentation deprived the plaintiff of an opportunity to make a better-informed choice whether to buy the product. For instance, in *Kim v. Carter's Inc.*, plaintiffs brought a contract claim arguing that an "inflated, fictitious 'suggested price' led them to believe that they were paying 30% less than what other consumers usually paid, when in fact they were simply paying the full, regular price," and alleged that the suggested prices "induced them to buy [the] clothing." 598 F.3d at 364, 365. The Seventh Circuit found that the plaintiffs suffered no actual damages because they "got the

8

benefit of their bargain and suffered no actual pecuniary harm." *Id.* at 366. "Plaintiffs agreed to pay a certain price for Carter's clothing, which they do not allege was defective or worth less than they actually paid." *Id.* at 365; *accord Camasta v. Jos. A. Bank Clothiers, Inc.,* No. 12 C 7782, 2013 WL 474509, at *4 (N.D. Ill. Feb. 7, 2013).

Similarly, in *Shaulis v. Nordstrom Inc.,* a Massachusetts district court considered whether the purchase of a sweater allegedly induced by a price misrepresentation could constitute an injury under Massachusetts's consumer protection law. 120 F. Supp. 3d 40, 51-52 (D. Mass. 2015). Noting that the plaintiffs did not claim to suffer emotional harm, the Court classified the harm, if there was any, as economic. The problem, according to the Court, was:

> The injury that plaintiff claims to have suffered is not an "injury" in any traditional sense of the word. She paid $49.97 for a sweater on the alleged belief "that she saved at least 77% on her purchase.". . . But it appears that she paid $49.97 for a sweater that is, in fact, worth $49.97. She still has the sweater in her possession. She does *not* allege that it is worth less than the selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is of an inferior design, or that it is otherwise defective. . . . [T]he fact that plaintiff may have been manipulated into purchasing the sweater because she believed she was getting a bargain does not necessarily mean she suffered economic harm: she arguably got exactly what she paid for, no more and no less.

*Id.* at 51-52; *accord Mulder v. Kohl's Dep't Stores, Inc.*, No. 15 Civ. 11377, 2016 WL 393215, at *6 (D. Mass. Feb. 1, 2016) (Although "the transaction was arguably to her detriment . . . [the plaintiff] has suffered no loss, and there is no sum of money that could be awarded to her that could 'compensate' her without providing a windfall."); *see also Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253-54 (1st Cir. 2010) (no "economic harm" where plaintiff alleged only "violation of some abstract 'right' like the right not to be subject to a deceptive act").

Plaintiff cites the Ninth Circuit's decision in *Hinojos* to argue that *Small* and its progeny are inapplicable to this case. *Hinojos* concerns standing under a California statutory cause of

9

action, so it is of limited relevance here. Moreover, the underlying injury identified by the Ninth Circuit is similar to the price premium injury recognized by New York law, but not adequately alleged by Plaintiff. *Hinojos* concerns the California Fair Advertising Law or "FAL." The FAL prohibits retailers from advertising the "former price" of a good unless the "former price was the prevailing market price . . . within three months." 718 F.3d 1098, 1103 (9th Cir. 2013) (quoting Cal. Bus. & Prof. Code § 17501). But California has also restricted the private cause of action under the FAL to consumers who suffer "injury in fact and ha[ve] lost money or property." *Id.* (quoting Cal. Bus. & Prof. Code § 17204). Reconciling these potentially inconsistent statutes, the *Hinojos* court explained that a plaintiff could allege the "economic injury" required by Section 17204 by alleging that "[they] would not have purchased the goods in question absent [the defendant's] misrepresentation." *Id.* at 1105. The Court held that such a plaintiff suffers an injury to the extent that "the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury." *Id.* at 1104 (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 340 (2011)).

The injury identified by the *Hinojos* court is a "price premium" injury by another name.[4] The difference between "actual damages" under *Small* and "economic injury" under *Hinojos* is in the cognizable measure of damages. Under California law, a plaintiff sufficiently alleges injury based on allegations that the defendant's false advertising caused them subjectively to assign a higher value to the good than they would have otherwise. Simply alleging that plaintiff would not have made the same purchasing decision but for the misrepresentation is not adequate

---

[4] A concrete example may help illustrate the point: assume the plaintiff in *Hinojos* purchased a shirt for $120 believing that it had been marked down from $250. The mark-down, or bargain, has value to the *Hinojos* purchaser, who otherwise would not be willing to pay $120 for a $120 shirt. The shirt, standing alone, may have had only a value of (say) $100 to the plaintiff. The difference between the subjective value assigned to the shirt by the plaintiff ($100) and what he was induced to pay ($120) was his injury. That is another way of saying that the defendant's misrepresentation caused the plaintiff to overpay by $20.

10

under New York law—*Small* requires some connection between the deception and the price actually paid by the plaintiff or the intrinsic value of the good. *Accord Kim*, 598 F.3d at 365 ("plaintiffs [have not] alleged that, but for Carter's deception, they could have shopped around and obtained a better price"); *Shaulis*, 120 F. Supp. 3d at 52 (rejecting claim because "alleged injury was based entirely on the plaintiff's subjective belief as to the nature of the value she received"). The Complaint alleges the measure of injury recognized in *Hinojos*, but it does not allege, other than conclusorily, the more concrete price premium injury required under *Small*.

The injury alleged in the Complaint is based solely on the "choice-as-injury" theory rejected in *Small*. It does not plausibly allege a "price premium" injury nor does it allege that Plaintiff was sold a shirt different from what he believed he was purchasing. The Complaint's only reference to a price premium theory is the conclusory allegation that Plaintiff "would not have purchased the Burberry Outlet Products, or would not have paid the price he did, if he had known he was not truly receiving a bargain, or receiving a discount, as specified." Compl. ¶ 37. But the Complaint does not allege any facts that suggest that Burberry charges a higher price for products tagged with a deceptive reference price than it charges for clothing not so tagged. For instance, there are no allegations that Burberry sells similar shirts with accurate price tags for lower prices. At best, the Complaint alleges that as a result of Burberry's deceptive pricing, Plaintiff paid more than he was subjectively willing to otherwise pay. That, however, is not the same as factual allegations that Burberry uses deceptive reference prices to charge consumers a higher price for the same merchandise.[5]

---

[5] In his unjust enrichment claim, Plaintiff states that "Plaintiff and members of the Nationwide Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Burberry and reasonable consumers would have expected." Compl. ¶ 95. Taking the facts in the light most favorable to the Plaintiff, as the Court must, Plaintiff has made no allegations that Burberry made any representations at all about the quality of the garments it was selling at the outlet store. It is not clear what Plaintiff means when he says he and members of the Class did not receive a product of the "nature" or "fitness" represented by Burberry, but, in any event, he also has not alleged that Burberry made any representations about either the "nature" or "fitness" of its products. That leaves

11

In the same vein, the Complaint does not allege that Plaintiff was misled into believing that he was purchasing a product that is intrinsically different than what he expected. The alleged misrepresentations relate only to pricing information. The Complaint alleges, generally, that retailers use deceptive reference prices as a tactic to create a false impression that made-for-outlet goods are really the most recent fashions, Compl. ¶¶ 2-5, 15-17, but it does not allege that Plaintiff believed that he was buying "retail" Burberry products—only that he believed he purchased the products on "terms more preferential or more optimal to the consumer than those offered outside the context of the outlet store." *Id.* at ¶ 32. Assuming Plaintiff did believe he had purchased a "retail" Burberry shirt, the Complaint does not allege that outlet-branded products are different in any objective way from retail-branded Burberry products. And, finally, there are no allegations in the Complaint that there was anything wrong with the shirts or that Burberry misrepresented anything about the shirts, such as saying they were 100% cotton when they were in fact a polyester blend, or that they were manufactured in England when they were manufactured elsewhere.

To recapitulate: New York law does not permit a plaintiff to allege "actual damages" based solely on his claim that he would not have chosen to purchase the good but for the defendant's misrepresentation or that he believed he was getting a better bargain than turned out to be the case. "Actual damages" requires a connection between the misrepresentation and the price that is charged by the defendant or the quality of the good. Defendant's motion to dismiss Plaintiff's common law fraud claim is GRANTED.

---

the allegations regarding the "value" of the garments, but the conclusory allegation that Plaintiff did not receive a product of the value that had been represented by Burberry is not sufficient to plead that the product was actually less valuable than what Plaintiff paid for it.

B.   **Florida Deceptive and Unfair Trade Practices Act**

To recover under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.21 *et seq.* ("FDUTPA"), "a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012).[6] Under Florida law: "[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006); *see also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (rejecting claim based on misleading advertisements where plaintiffs could not allege any concrete damage); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1346-47 (S.D. Fla. 2014) (recognizing price premium theory under Florida law). Defendant contends that "actual damages" for purposes of the FDUTPA are the same as actual damages under New York law. *See* Def.'s Mem. at 14 (both Florida and New York law require allegations of "actual and cognizable" damages). Plaintiff does not challenge the point, effectively conceding that the same standard applies under New York and Florida law. Because the Court has already concluded that the Complaint does not allege actual damages under New York law, the Court also finds that the Complaint does not state a claim under FDUTPA.

C.   **Negligent Misrepresentation**

Plaintiff brings a claim for negligent misrepresentation under both Florida and New York common law. To state a claim for negligent misrepresentation under Florida law, Plaintiff must

---

[6]   Federal courts in Florida are divided as to whether Rule 9(b)'s heightened pleading standard applies to FDUPTA claims. *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (applying Rule 9(b) heightened pleading standard); *Galstaldi v. Sunvest Cmties. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009)

13

allege, "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *McGee v. JP Morgan Chase Bank*, NA, 520 F. App'x 829, 831 (11th Cir. 2013) (quoting *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004)). "Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims" because actions for negligent misrepresentation in Florida sound in fraud. *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 951 (11th Cir. 2014). Additionally, plaintiff must allege actual damages. *Prohias*, 485 F. Supp. 2d at 1334-35.

Plaintiff's Florida negligent misrepresentation claim is based on the same allegations of deceptive reference prices. Here too, Plaintiff has not stated a claim because Plaintiff has not alleged damages.

Plaintiff's New York common law negligent misrepresentation claim suffers from the same defect. Additionally, the claim fails because Plaintiff has not pled the requisite special relationship. To state a claim for negligent misrepresentation under New York law, Plaintiff must plead that "the defendant had a duty, as a result of a special relationship, to give correct information." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir. 2000).[7]

---

(holding that the requirements of Rule 9(b) do not apply to FDUPTA). The Court need not decide this issue because Plaintiff has failed to allege actual damages but would be inclined to agree with *Stires* that Rule 9(b) does apply.

[7] In full, the elements of negligent misrepresentation under New York law are: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Naughright v. Weiss*, 857 F. Supp. 2d 462, 469-70 (S.D.N.Y. 2012).

"To allege a special relationship, [a plaintiff] must establish something beyond an ordinary arm's length transaction." *Naughright*, 857 F. Supp. 2d at 470. Plaintiff has not pleaded facts to suggest such a relationship.[8] Accordingly, Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim under New York law is GRANTED.

**D.     Unjust Enrichment**

Finally, Plaintiff brings a claim for unjust enrichment pursuant to Florida and New York common law. To state a claim for unjust enrichment under Florida law, Plaintiff is required to allege that he (1) "has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accept[ed] and retain[ed] the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994). Unjust enrichment under New York law is substantially the same. *See Baron v. Pfizer, Inc.,* 840 N.Y.S.2d 445, 448 (3d Dep't 2007). Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

Plaintiff's unjust enrichment claim involves the same allegations as Plaintiff's FDUPTA, fraud, and negligent misrepresentation claims. Although a plaintiff is allowed to plead unjust enrichment in the alternative, here the claim must be dismissed because it suffers from the same deficiencies fatal to the remainder of Plaintiff's claims—Plaintiff's failure to plead cognizable injury and damages. *See Guerrero*, 889 F. Supp. 2d at 1357 ("Although a plaintiff ordinarily may plead in the alternative, if Plaintiff cannot prevail on [his] FDUTPA claim, [he] cannot

---

[8]     Plaintiff indicates, in a footnote, that he "does not dispute Defendant's motion as to negligent misrepresentation." Pl.'s Opp. 22 n.14. The Court assumes that Plaintiff is referring to negligent misrepresentation under New York law.

prevail on [his] unjust enrichment claim."); *Corsello*, 18 N.Y.3d at 791 ("[I]f plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."). Thus, Plaintiff's claim for unjust enrichment cannot survive.

Accordingly, Defendant's motion to dismiss the unjust enrichment claim is GRANTED. Because all of Plaintiff's claims are dismissed, the Court need not address Defendant's motion to dismiss or strike the nationwide class allegations pursuant to New York common law.

### E.     Leave to Amend

Plaintiff has requested leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

Except as to Plaintiff's New York negligent misrepresentation claim, the Court does not find that amendment would necessarily be futile in this case. Plaintiff will have the opportunity to amend and allege injury based on a price premium theory or that the product Plaintiff purchased was different than what he expected. Plaintiff is forewarned, however, that nonspecific allegations that Burberry sells the same shirt for less or that Plaintiff was led by Burberry's actions to believe erroneously that he was purchasing a product normally sold in regular Burberry retail stores without any factual investigation and support are inadequate to state a claim. Any amendment of these claims must set forth factual allegations with the particularity required by Rule 9(b).

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Plaintiff must file any amended complaint by **March 15, 2017**. The Clerk of Court is respectfully requested to close the open motions at docket entries 29 and 33 and terminate the case.

**SO ORDERED.**

Date: **February 23, 2017**
      **New York, New York**

                                        **VALERIE CAPRONI**
                                        **United States District Judge**