USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/1/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS BELCASTRO, individually and on behalf of all others similarly situated,

                          Plaintiff,

-against-

BURBERRY LIMITED,

                          Defendant.

16-CV-1080 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, District Judge:

      This is Plaintiff Thomas Belcastro's ("Belcastro") second attempt to plead actual injury under New York and Florida law. Belcastro purchased five shirts from Burberry factory outlets in Florida, believing, according to Belcastro, that the shirts were deeply discounted. The Court dismissed Belcastro's original complaint because he did not allege an actual injury under New York and Florida law: Belcastro did not allege that the shirts he purchased were worth less than the amount he paid or that they were in any objective way different from what he believed he was buying. Belcastro's amended complaint does not cure this deficiency, and the Amended Complaint must be dismissed for the same reasons. Burberry's motion to dismiss the Amended Complaint is GRANTED, and the Amended Complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

      There is a rash of litigation in the federal courts concerning so-called outlet-pricing schemes. Generally speaking, these suits allege that brand-name, luxury retailers like Burberry use deceptive pricing to mislead outlet shoppers into believing they are purchasing goods at a significant markdown. Goods are marked with a higher "compare at" price, or a "was" price, or

1

a "manufacturer's suggested retail price" ("MSRP"), which causes bargain-hunters like Belcastro to believe that the same or similar goods previously sold for more. Because the goods are sold in outlet stores, some consumers may also believe that the goods so-marked were formerly sold in luxury retail or "mainline" stores. These "reference" prices are false; the goods are manufactured specifically for sale in outlet stores and were never sold for the "compare at" or "was" price.

On February 23, 2017, the Court dismissed Belcastro's original complaint with leave to amend. *Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017) ("*Burberry I*"). The Court explained that the complaint did not allege a cognizable "actual" injury under either New York or Florida law. *Id.* at *5-6. In his initial complaint, Belcastro alleged that he purchased five Burberry shirts from Burberry outlet stores in Florida between 2014 and 2015 and that each of the shirts was marked with a "was" price or MSRP. *Id.* at *1. Belcastro did not allege, however, that he overpaid for any of the shirts or that the shirts were objectively different in any measurable way from what he believed he was purchasing. *Id.* at *5-6. Instead, Belcastro alleged that he was injured because he "would not have purchased the Burberry Outlet Products, or would not have paid the price he did, if he had known he was not truly receiving a bargain." *Id.* at *1 (quoting Compl. (Dkt. 13) ¶ 37). This theory of injury is inadequate because neither New York nor Florida law recognizes as a cognizable injury a consumer's subjective disappointment at not receiving a promised bargain. *See id.* at *3 (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)). "New York law . . . requires some connection between the deception and the price actually paid by the plaintiff or the intrinsic value of the good." *Id.* at *5.

The Court dismissed Belcastro's complaint but granted him leave to amend with clear instructions as to what New York law requires:

> Plaintiff will have the opportunity to amend and allege injury based on a price premium theory [that he overpaid] or that the product Plaintiff purchased was different than what he expected. Plaintiff is forewarned, however, that nonspecific allegations that Burberry sells the same shirt for less or that Plaintiff was led by Burberry's actions to believe erroneously that he was purchasing a product normally sold in regular Burberry retail stores without any factual investigation and support are inadequate to state a claim. Any amendment of these claims must set forth factual allegations with the particularity required by Rule 9(b).

*Id.* at *8.

Belcastro filed his amended complaint on March 15, 2017, Dkt. 49 (the "Amended Complaint"). The Amended Complaint attempts to cure the deficiencies identified by the Court by pleading two new theories. First, Belcastro alleges that he was deceived into purchasing made-for-outlet products because he was led to believe that the products were "designed and manufactured for 'real,' mainline Burberry stores or for sale at mainline retailers." Am. Compl. ¶ 36. According to Belcastro, he was injured by this deception because "made-for-outlet products are intrinsically less valuable than mainline products" and because "he did not receive a product that was discounted by a particular percentage over the retail price; he did not receive a product that was regularly sold for the Deceptive Reference Price; and he did not receive a product whose prestige and quality was accurately conveyed by its Deceptive Reference Price." Am. Compl. ¶¶ 36-37. In the alternative, Belcastro alleges that he overpaid because the "Deceptive Reference Prices induced [Belcastro] to overvalue, and thus overpay for, the Outlet Products . . . ." Am. Compl. ¶ 42. Belcastro "valued Defendant[']s Outlet Products at a percentage value lesser than" whatever their retail price; thus, by assigning outlet-only products a higher, false reference price, Burberry led Belcastro to "over inflate the value at which [he] [was] comfortable parting with [his] money." Am. Compl. ¶¶ 43-44.

3

Burberry has renewed its motion to dismiss. Burberry argues that neither of Belcastro's revised theories states an actual injury as required by New York and Florida law. Alternatively, Burberry contends the Amended Complaint does not allege fraud with the particularity required under Rule 9 of the Federal Rules of Civil Procedure.

## DISCUSSION

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*, *PLC,* 709 F.3d 109, 120 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In deciding a motion to dismiss, courts must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).

A heightened pleading standard applies to claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead the circumstances constituting fraud with particularity, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006)

4

(quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)). To plead malice, intent, or knowledge "generally" means that "the general 'short and plain statement of the claim' mandate in Rule 8(a) . . . should control the second sentence of Rule 9(b)." *Iqbal*, 556 U.S. at 687 (quoting 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed. 2004)). But "'generally' is not the equivalent of conclusorily . . . [P]laintiffs must still plead the events which they claim give rise to an inference of [malice, intent, or] knowledge" to satisfy the Rule 8(a) pleading standard. *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (citations omitted).

The central issue in this case remains whether Belcastro has alleged a cognizable "actual" injury that is separate from Burberry's allegedly deceptive conduct. As the Court explained in *Burberry I*, New York law "does not recognize an injury based on deception itself—the fact that Plaintiff was deceived is not, standing alone, an 'actual injury.'" *Burberry I*, 2017 WL 744596 at *3 (citing *Small*, 94 N.Y.2d at 56). "[A]n actual injury claim . . . requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Braynina v. TJX Cos., Inc.*, No. 15-CV-5897 (KPF), 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016) (quoting *Orlander v. Staples*, 802 F.3d 289, 302 (2d Cir. 2015)). This may be accomplished by showing either that the plaintiff did not receive the product he bargained for or that the deceptive practice caused the plaintiff to overpay. *See id.* As applied to an outlet-pricing case, New York's "actual injury" requirement means that an outlet shopper may not state a claim based simply on the fact that he thought the products he was purchasing previously sold for more. *Burberry I*, 2017 WL 744596 at *5; *see also Irvine v. Kate Spade & Co.*, No. 16-CV-7300 (JMF), 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017). This "but-I-thought-I-got-a-bargain" theory impermissibly combines deception (the appearance of a bargain) with injury (there was no actual bargain).

The First Circuit recently discussed the "actual injury" requirement, as it applies to deceptive reference pricing, in a lengthy and persuasive opinion.[1] *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017). In *Shaulis*, the plaintiff purchased a sweater from a Nordstrom Rack outlet store marked with a sale price and a "compare at" price. *Id.* at 4. Like Belcastro, Shaulis alleged that she believed that the "compare at" price was a "bona fide price at which Nordstrom (or some other retailer) formerly sold those products." *Id.* at 5. And, like Belcastro, Shaulis alleged that her injury was that she believed the "sweater was worth more than the price Nordstrom actually charged." *Id.* at 11. The First Circuit rejected this theory because it "is simply another way of saying that Shaulis was wrongfully deceived by Nordstrom. She identifies no objective injury traceable to the purchased item itself – for example, that the sweater was poorly made or that its materials were misrepresented." *Id.* And, in language that is directly applicable to this case, the First Circuit rejected Shaulis's argument that the "'compare at' price tag was a false representation that the sweater was of 'high quality,'" because Shaulis did not explain why the sweater was "not of 'high quality' in any objective way." *Id.* at 12.

*Shaulis* is persuasive and, along with *Small*, it forecloses each of Belcastro's revised injury theories. Belcastro's theory that he paid more than he otherwise would have been willing to pay is based solely on the subjective injury rejected in *Burberry I* and in *Shaulis*. Under this theory (Am. Compl. ¶¶ 42-46), the deceptive act is the false appearance of a discount and the injury is that Belcastro paid more than he was otherwise willing to pay. Taking as an example a navy polo shirt with a $150 MSRP and true price of $119, Belcastro explains that he valued the shirt at 21% below retail (the difference between $150 and $119) and thus, would only have been

---

[1] The First Circuit was applying Massachusetts law in *Shaulis* but Massachusetts law is similar to New York law on this issue, and *Shaulis* cited for support to the *Small* decision as well as a decision from the Seventh Circuit applying Illinois law. *See Shaulis*, 865 F.3d at 13 (citing *Small* and *Kim v. Carter's Inc.*, 598 F.3d 362, 366 (7th Cir. 2010)).

willing to pay $94.01 (a 21% discount off of $119) if the true retail price had been disclosed accurately. Am. Compl. ¶¶ 45-46. This is exactly the injury the Court rejected in *Burberry I*. New York law does not recognize an injury based on the subjective value assigned to a missing bargain because it merges deception and injury.[2]  *See Burberry I*, 2017 WL 744596 at *5.

Belcastro's attempt to recast this theory as a "price premium" theory is unpersuasive. A "price premium" injury exists when a misrepresentation causes the plaintiff to overpay for a product. *See Orlander*, 802 F.3d at 302. A price premium injury may be alleged by showing either that because of a misrepresentation the plaintiff received a good worth less than what he paid for, i.e., a good of inferior quality, or that because of a misrepresentation the plaintiff paid an inflated price.[3] Judge Furman recently fleshed out the latter theory in *Irvine*. In order to allege a price premium injury based on overpayment, a plaintiff must allege that he overpaid by some objective measure, and not just that he felt, subjectively, that he overpaid:

> In the absence of [that] sort of allegation—for instance, that Kate Spade sells the same merchandise, *without* the deceptive "Our Price" labeling, for a lower price—Plaintiffs cannot connect any cognizable injury to Kate Spade's alleged deceptive practice. In other words, Plaintiffs do not, and cannot, establish a valid 'price premium' claim based solely on the 'Our Price' tags, as they do not allege that the tagged goods commanded a higher price than goods without the tag.

2017 WL 4326538 at *4; *see also Shaulis*, 865 F.3d at 12 ("claims of injury premised on 'overpayment' for a product, or a loss of the benefit of the bargain, require an objective measure

---

[2] Unlike New York law, California law recognizes an injury based on false advertising that leads a buyer to subjectively assign a higher value to a product than he would have otherwise. *See Burberry I*, 2017 WL 744596 at *5 (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013)). Belcastro's Amended Complaint appears to attempt to plead exactly the injury which was recognized in *Hinojos* but which is not cognizable under New York law. *See id.*

[3] The difference between these two theories is slim, if any. Typically, consumers have overpaid because they received a good that is of inferior quality. Nonetheless, Belcastro alleges each theory separately, and the Court addresses them in turn.

against which the plaintiff's allegations may be evaluated").[4] The Amended Complaint does not plead such an injury. Belcastro does not allege that he purchased products that normally retail for less than he actually paid. Rather, Belcastro's theory is that he paid a price premium because he did not receive a shirt that is objectively worth *more* than what he paid. *See* Opp'n (Dkt. 53) at 10 (Belcastro "believed he was paying $100 for an outlet product 'worth' $150 to shoppers at Burberry's standard retail stores, . . . ."). This is nothing more than a slightly repackaged version of the "but-I-thought-I-got-a-bargain" injury the Court has rejected already.

Belcastro's attempt to plead an injury based on the quality of the goods he purchased is more promising, but it is inadequately pleaded. The classic example of a quality-based injury is paying for fat free milk but receiving milk containing fat instead, *Koenig v. Boulder Brands. Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014), or paying for dog food made from bacon that in fact contains grain fillers, *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *2 (S.D.N.Y. Aug. 12, 2016).[5] Belcastro alleges that the MSRPs or "was" prices led him to believe he was purchasing "retail" Burberry products ordinarily sold in mainline Burberry stores. Allegations that a plaintiff believed he was purchasing a retail product when in fact he

---

[4] Courts in other districts, including those applying Florida law, have explained the overpayment theory similarly. *See Hubert v. General Nutrition Corp.*, No. 15-CV-1391, 2017 WL 3971912, at *7 (W.D. Pa. Sept. 8, 2017) (dismissing complaint where plaintiff failed to identify "any comparable, cheaper products" to show that they purchased goods at a price premium"); *Meyer v. Colavita USA Inc.*, No. 10-61781-CIV, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) ("For example, Plaintiffs do not plead facts demonstrating that they paid 'X' dollars for what they thought was extra virgin olive oil that in fact turned out to be simply virgin olive oil worth 'Y' dollars."), *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1340 (S.D. Fla. 2009) (Finding price premium adequately pled because plaintiff alleged that "Wrigley has been able to charge a price premium for Eclipse® gum over other chewing gum products, including other Wrigley chewing gum products.").

[5] *Orlander*, which Belcastro cites, is such a case, but it is not helpful to Belcastro's cause. In *Orlander*, the Plaintiff alleged that he "purchased a two-year 'Carry-in' Protection Plan," but in fact got a protection plan for one year from Staples that would follow the standard-issue one-year manufacturer's warranty. *Orlander*, 802 F.3d at 294, 302. Because the plaintiff was led to believe he was getting a two year warranty from Staples but was actually only getting a one year warranty, the plaintiff was injured. That is not Belcastro's theory. As the Court pointed out in *Burberry I*, Belcastro could pursue that theory if he alleged that Burberry mismarked clothing saying, for example, that it was made of pure wool when the clothing was, in fact, a wool-cotton blend. 2017 WL 744596 at *6.

received outlet-only goods potentially allege distinct injury and deception because outlet-only products may be inferior in quality to, and have a lower resale value than, retail goods. *See Irvine*, 2017 WL 4326538, at *4-5; *Belcastro I*, 2017 WL 744596 at *6. A retailer who presents outlet-only products as retail products might be similar to a wine merchant who passes off new world table wine as first growth Bordeaux or a horologist who sells a counterfeit watch as a Rolex if there are similar differences between the retail products and the outlet-only products. *See Shaulis*, 865 F.3d at 12 ("falsely advertising a [counterfeit] watch as a 'Rolex' is a material misstatement about the watch's quality"); *Ebin*, 2013 WL 6504547, at *4-5 (plaintiff adequately alleged a quality-based injury when he purchased oil labeled as "100% pure olive oil" that contained olive-pomace oil).

To the extent Plaintiff intends to proceed on this theory it is inadequately pleaded; fatally so. The Amended Complaint does not allege how the outlet-only goods purchased by Belcastro differ from the retail products Belcastro believed he was purchasing. The only relevant allegations in the Amended Complaint are that "made-for-outlet products are intrinsically less valuable than mainline products," Am. Compl. ¶ 36, and that Belcastro "did not receive a product whose prestige and quality was accurately conveyed by its Deceptive Reference Price," Am. Compl. ¶ 37. Neither of these allegations puts Burberry on notice of Belcastro's claim and they do not satisfy Rule 8(a) of the Federal Rules of Civil Procedure.[6]

A statement that a good is of inferior quality – or different in "prestige and quality," in Belcastro's words – is the sort of highly generalized allegation that is inadequate to put a defendant on notice without additional factual support. *See ID7D Co., Ltd. v. Sears Holding*

---

[6] Because Belcastro alleges fraud, a heightened pleading standard applies pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons given above, Belcastro's bare assertion that Burberry retail goods are of better quality than outlet goods is inadequate to state a claim under Rule 8(a), much less the more stringent standard applicable under Rule 9(b).

9

*Corp.*, No. 11-CV-1054 (VLB), 2012 WL 1247329, at *11 (D. Conn. April 13, 2012) (Plaintiff's assertion that a competing barbecue grill was of "inferior quality" is "at best a 'naked assertion devoid of further factual enhancement'" (quoting *Iqbal*, 556 U.S. at 678)). If the goods were really inferior, Plaintiff ought to be able to specify objective ways in which that is so. The Amended Complaint leaves Burberry guessing whether Belcastro's theory is that the shirts he purchased are inferior because they are made of different and less luxurious materials (for example, the shirts have plastic buttons instead of horn or are made of a cashmere-lamb's wool blend instead of pure cashmere); or because Burberry outlet products are sold in bulk, making them less exclusive; or because Burberry outlet products are made in particular patterns and cuts, which differentiate them from Burberry retail goods, thereby making them less valuable.[7] As the First Circuit explained in *Shaulis*, a "plaintiff's 'bare assertion' that a product is deficient in some way is 'conclusory and can be subjective.'" 865 F.3d at 12. Absent factual allegations that a good "was not of 'high quality' in [an] objective way" this bare allegation is "fundamentally no different" than the subjective "but-I thought-I-got-a-bargain" theory this Court has already rejected. *Id.*

The Amended Complaint also fails to allege any facts to show that the shirts purchased by Belcastro were in fact "outlet only" products, and not overrun, unsold retail goods. *See* Am. Compl. ¶ 36. In other outlet pricing cases, plaintiffs have alleged facts supporting an inference that the goods purchased were made exclusively for sale in outlets. For example some plaintiffs have alleged that outlet-only products are marked with a different product code, *see, e.g.*, *Marino*

---

[7] The Court rejects Belcastro's argument that Burberry outlet-only goods are similar to counterfeit goods. Am. Compl. ¶ 36. Belcastro acknowledges that he purchased Burberry-branded products, and he has not alleged any objective differences between the products he purchased and Burberry retail goods. *Cf. Shaulis*, 865 F.3d at 12 (explaining that a counterfeit Rolex is inferior to the real thing because it is made from inferior materials).

10

*v. Coach, Inc.*, __ F. Supp. 3d __, 2017 WL 3731954, at *5 (S.D.N.Y. Aug. 28, 2017) (Plaintiff satisfied Rule 9(b) standard by alleging that Coach-branded outlet products are marked with style numbers beginning with an "F"); *Pickles v. Kate Spade & Co.*, No. 15-CV-5329-VC, 2016 WL 3999531, at *1 (N.D. Cal. July 26, 2016) (same), while others have alleged that store representatives confirmed to the plaintiff that the goods were outlet-only, *Taylor v. Nike, Inc.*, No. 16-CV-661-MO, 2017 WL 663056, at *8 (D. Or. Feb. 17, 2017) (concluding that Plaintiff satisfied Rule 9(b) only by alleging that Nike sales associates "routinely confirm that products are manufactured exclusively for outlet stores"). Such allegations are necessary to allege fraud with particularity and to satisfy the requirement that a plaintiff alleging fraud must conduct a pre-filing investigation of his claim.[8]

In sum, the Amended Complaint fails to allege an "actual injury" cognizable under New York or Florida law. Because this shortcoming is fatal to each of Belcastro's claims, the Amended Complaint must be dismissed in its entirety.

---

[8] Courts have dismissed "compare at" pricing cases for similar reasons. *See Sperling v. DSW Inc.*, No. 15-1366-JGB, 2016 WL 354319, at *6 (C.D. Cal. Jan. 28, 2016) ("Nowhere does the SAC explain how Defendants' comparative reference prices are inflated or why they do not accurately reflect prevailing market prices."); *Branca v. Nordstrom, Inc.,* No. CV 14–2062–MMA (JMA), 2015 WL 1841231, at *6 (S.D. Cal. Mar. 20, 2015) (conclusory allegations that "compare at" prices were fictional are inadequate to state a claim under Rule 9(b)); *Mahfood v. QVC, Inc.,* No. SACV 06–0659 AG, 2007 WL 9363986 at *4 (C.D. Cal. Feb. 7, 2007) (conclusory allegations that "compare at" prices did not reflect prevailing market prices are inadequate under Rule 9(b)).

## CONCLUSION

For the reasons given above, and in *Burberry I*, the Court GRANTS Defendant's motion to dismiss the Amended Complaint. The Amended Complaint is DISMISSED WITH PREJUDICE.[9] The Clerk of the Court is directed to close the open motion at docket entry 50 and to close the case.

**SO ORDERED.**

**Date: December 1, 2017**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

---

[9] Belcastro has not requested leave to amend a second time or attached a proposed second amended complaint for the Court's consideration. To the contrary, Belcastro's opposition to the motion to dismiss appears to double-down on the theory of injury the Court has already rejected in *Burberry I* and rejects again in this opinion. In light of Belcastro's multiple, unsuccessful attempts to state a claim, the Court finds that leave to amend would be futile.